726 So.2d 185 (1998)
Raymond FLOWERS a/k/a Raymond Renee Flowers a/k/a "Onionhead" Appellant.
v.
STATE of Mississippi.
No. 97-KA-00530COA.
Court of Appeals of Mississippi.
November 24, 1998.
*186 Samuel M. Tumey, Liberty, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE McMILLIN, P.J., DIAZ, AND PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. Raymond Flowers was convicted by a jury in the Circuit Court of Franklin County of two counts of sale of cocaine. Flowers appeals his conviction asserting that the trial court committed reversible error in failing to grant his motion for a j.n.o.v. and for admitting into evidence videotapes of the drug transactions. We find these issues to be without merit and affirm both convictions.

I.

Facts
¶ 2. On January 5, 1996, agents from the Mississippi Bureau of Narcotics conducted an undercover operation in Bude, Mississippi, after receiving information that there were numerous drug sales being carried out in that area. The agents enlisted the assistance of Louis Pearly, a paid confidential informant. After searching Pearly's truck and person and satisfying themselves that Pearly did not have any drugs or money, the agents outfitted Pearly with a hidden body transmitter. The agents also concealed a video camera in Pearly's truck. Pearly was issued $50 in state funds and instructed to target Tim Lee, a suspected drug dealer. The agents followed Pearly to the general vicinity where the drug transaction took place, but remained at a discreet distance to avoid being observed by potential targets. As a result, the agents could not actually observe Pearly but they were able to monitor Pearly's conversations through the body transmitter.
¶ 3. As Pearly was driving around trying to locate Tim Lee, he was flagged down by Raymond Flowers. Pearly asked Flowers where he could buy a "fifty", which is the street term for fifty dollars worth of cocaine. Flowers responded that he knew where he could get some drugs, but that the seller would not sell to Pearly directly because Pearly was unknown in the area. Flowers indicated that Pearly would have to go through him in order to procure drugs. Flowers then got into Pearly's vehicle and the two drove around until they found Lee. Pearly gave Flowers the state issued money, and Flowers instructed Pearly to let him out and drive around the block while he bought the drugs. Pearly saw Flowers give Lee money and saw Lee give Flowers something in return. When Flowers returned to the car, he handed Pearly a quantity of crack cocaine and asked if Pearly would share it with him. Pearly refused Flowers's request and told him that he was buying it for someone else. Pearly dropped Flowers off and delivered the cocaine to the agents.
*187 ¶ 4. The officers then asked Pearly to assist them in conducting another drug transaction later that same night. Their hope was that Pearly would be able to deal directly with Lee on this second occasion. The agents gave Pearly $140 in state funds and directed Pearly to observe the same procedures used earlier that evening. As Pearly approached the same area, Flowers once again came up to his car and knocked on the window. Pearly told Flowers he was trying to get an "eight ball" from Tim Lee. This was, in street parlance, an eighth of an ounce of cocaine that, according to testimony, usually sold for about $140. Flowers again indicated that Lee would not deal directly with Pearly and that he (Flowers) would have to act as an intermediary. Pearly gave Flowers the $140, and watched as Flowers gave the money to Lee. According to Pearly, Lee gave Flowers a matchbox, which was ultimately shown to contain the drugs. Flowers again asked Pearly to share some part of his purchase, but Pearly refused, telling him that he would share with him next time. Flowers, testifying in his own defense, essentially corroborated the testimony of Pearly and the two narcotics agents. He admitted that, on both occasions, he bought the cocaine with money Pearly had given him and gave it to Pearly. Though it is difficult to see the significance to the defense, Flowers insisted that he had purchased the drugs from someone other than Lee.
¶ 5. The jury convicted Flowers of two counts of sale of cocaine. Flowers filed post-trial motions for a j.n.o.v. or, in the alternative, a new trial. The motions were denied by the trial court and this appeal ensued.

II.

Sufficiency of the Evidence
¶ 6. As his first assignment of error, Flowers contends that there was insufficient evidence to sustain his conviction. Flowers argues that, based on the evidence presented at trial, the jury should have concluded that he was acting as a co-buyer with Pearly, and consequently, at most, the evidence only supported a conviction for simple possession. Flowers bases his argument on the fact that there was no evidence that he was employed by the seller or that he received any payment for acting as the conduit between Lee and the confidential informant.
¶ 7. Flowers also argues that his fleeting possession of the cocaine while carrying it from the seller to Pearly was insufficient evidence as a matter of law to demonstrate that he exercised dominion and control over the cocaine.
¶ 8. In reviewing a challenge to the sufficiency of the evidence, this Court evaluates the evidence in the light most favorable to sustaining the conviction. McClain v. State, 625 So.2d 774, 778 (Miss.1993). We accept as true credible evidence that supports Flowers's conviction. Id. Issues concerning weight and credibility are the sole province of the jury. Id. We may reverse only if we are convinced that, as to one of the essential elements of the crime, the State's proof was so deficient that a reasonable and fair-minded juror could only find Flowers not guilty. Id.
¶ 9. The statute under which Flowers was charged states that "it is unlawful for any person knowingly or intentionally: to sell.... a controlled substance." Miss.Code Ann. § 41-29-139 (Supp.1997).
¶ 10. Flowers seeks to escape criminal liability for his part in the two transactions by saying that there was no evidence that he was acting in concert with the actual seller or that he profited from the transaction in any way. He attempts to assume the status of the undercover agent's "co-buyer," apparently being of the opinion that, since the agent was not guilty of criminal conduct, neither could Flowers be if he were simply acting, in effect, as the agent's alter ego.
¶ 11. The laws of this State are quite clear that only a minimal involvement in an illegal drug transaction is sufficient to support a criminal conviction for drug trafficking. One who merely aids in the consummation of a drug transaction can be held guilty as a principal. Turner v. State, 573 So. 2d 1340, 1342 (Miss.1990). In that case, Turner had declined to make a direct sale of drugs to an undercover informant but had directed the informant to await another person *188 who would take care of the informant's needs. Id. Shortly thereafter, the informant was approached by another individual and a drug transaction was consummated. Turner was indicted for his part in this transaction and defended on the basis that there was no evidence proving his control over the drugs or that he received anything from the sale. Id. The Mississippi Supreme Court said that it was not essential to show that Turner had any actual control over the substance or that he derived a personal profit from the transaction since it was enough to show that he aided and abetted another in actually making the sale. Id.
¶ 12. We find Flowers's predicamant to be essentially the same as the defendant in the Turner v. State decision. His willingness to assist another person, no matter who that person was, in completing two separate drug sales is sufficient to implicate him as a principal in the transactions. Minor v. State, 482 So.2d 1107, 1112 (Miss.1986).
¶ 13. No matter what Flowers's motivation was for facilitating these two illegal transactions, his participation as established by the evidence in this trial implicated him in two separate criminal violations of this State's laws against trafficking in narcotics.

III.

Admission of Video Tape into Evidence
¶ 14. As his second assignment of error, Flowers contends that the trial court erred in admitting into evidence two videotapes depicting the drug transactions. Flowers argues that various parts of the tapes were inaudible and obscure due to poor lighting, and that, as a result, the tapes were "devoid of any useful content upon which a reasonable juror could determine that a crime had been committed or who might have committed it." According to Flowers, the admission of the less than perfect tapes caused the jury to assume that they contained evidence prejudicial to his defense, and that, based on that assumption, the jury found him guilty as charged.
¶ 15. The admissibility of evidence in this state is controlled by the Mississippi Rules Evidence. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules." M.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. As a general rule, the admission and exclusion of evidence is a matter entrusted to the sound discretion of the trial court. McIlwain v. State, 700 So.2d 586 (¶ 6-7) (Miss.1997). This Court may not interfere with the trial court's decision absent a finding that the trial court committed a manifest abuse of its discretion. Id.
¶ 16. In this case, the trial court reviewed the videotapes and found them to have some probative value. We are unconvinced that the judge abused his discretion in reaching this decision. Flowers himself testified that he was the individual shown in the videotapes orchestrating the sales. We note that the jury is charged with filtering the evidence and determining what evidence supports the defendant's guilt and what evidence does not. To the extent that the videotapes were inaudible and obscure in places that was a factor for the jury to weigh in determining whether the State proved beyond a reasonable doubt that Flowers participated in the cocaine sales. See Middlebrook v. State, 555 So.2d 1009, 1013 (Miss.1990). The jury as fact finder is presumed as a matter of "institutional imperative" to follow the law as they are instructed by the trial court. Id. We cannot conclude that the jury, in this case, failed in this respect.
¶ 17. We do not find particularly compelling the argument that the jury would automatically assume the worst in regard to portions of the tapes that might have been less than enlightening. The mere introduction of evidence having no probative value is not, of itself, reversible error. Only if the evidence is so prejudicial that it has the effect of denying the defendant a fundamentally fair trial ought an appellate court to intervene. McGowan v. State, 706 So.2d 231(¶ 48) (Miss.1997). The fact that certain *189 parts of the tape are unhelpful in shedding light on exactly what transpired is not, in our opinion, particularly prejudicial. Accordingly, we find this issue to be without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF FRANKLIN COUNTY OF CONVICTION OF TWO COUNTS OF SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS ON EACH COUNT AND $5,000 FINE ON EACH COUNT WITH SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.