825 So.2d 697 (2002)
Joel GUILLEN and Jorge Omar Salazar-Rincon, Appellants,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01089-COA.
Court of Appeals of Mississippi.
September 3, 2002.
Michael W. Crosby, Gulfport, Michael C. Hester, Long Beach, Attorneys for Appellants.
Office of the Attorney General By: Jeffrey A. Klingfuss, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Joel Guillen and Jorge Omar Salazar-Rincon were found guilty of possession of cocaine with intent to distribute by a Harrison County jury. Each was sentenced to thirty years in prison. Feeling aggrieved, Guillen and Salazar-Rincon assert two issues on appeal: (1) did the trial *698 court err by refusing to give a spoliation of evidence jury instruction, and (2) did the trial judge err by failing to grant a judgment notwithstanding the verdict or alternatively a new trial?
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. On December 15, 1994, Guillen, and Salazar-Rincon were passengers in a rental van accompanied by Gustovo Velez, and Ivania Soza, both passengers, and, Maritza Becerra, the driver. The group was traveling from Miami, Florida to New Orleans, Louisiana when they were stopped for speeding. Upon observing suspicious and nervous behavior by the female passengers, the officer asked for permission to search the van. Soza had rented the van and consented to a search. As a result of the search, the highway patrol officer found a quantity of cocaine hidden in a door panel. All five were arrested, taken to the highway patrol station, and interviewed individually. Apparently, no audio or video recording was made of the interviews.

ANALYSIS AND DISCUSSION OF THE ISSUES

Denial of Spoliation Jury Instruction
¶ 4. The Appellants contend that Captain Roy Sandefer, investigator for the Mississippi Bureau of Narcotics, should have recorded the interrogation either by audio, video, or contemporaneous notes. The Appellants further contend that when evidence is destroyed, there is an inference that the evidence was favorable to the defense. Therefore, the Appellants requested and were denied the following jury instruction:
The court instructs the jury that if the notes of Roy Sandefer were not made available to the defendant by the prosecution, then you may infer from such failure on part of the prosecution that if the notes were in fact produced, the notes would be adverse or unfavorable to the prosecution's case.
¶ 5. In reviewing the denial of a jury instruction, the appellate court must consider not only the denied instruction but all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. See Coleman v. State, 697 So.2d 777, 782 (Miss. 1997). However, if the instruction does not fairly announce the law, the defendant is not entitled to it, and no reversible error will be found. Id. "A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence." Humphrey v. State, 759 So.2d 368(¶ 33) (Miss.2000).
¶ 6. During the cross-examination, Captain Sandefer was questioned about his notes and his report. The following exchange transpired:
Q. But you don't have a handwritten report, do you?
A. No, sir, I do not.
Q. You have no notes whatsoever?
A. No, sir.
Q. During the entire interview when you are documenting this case, you are not taking any notes?
A. I don't recall if I did or did not, sir.
Q. Well, is it your testimony that if you took notes that you would have destroyed them for some reason?
A. Yes, sir.
Q. You destroyed evidence?
A. No, sir. I didn't destroy evidence. In my past experience, Ithis *699 would be the first time I recall that defense attorney asked for my Jinx[1] [sic] materials in state court. In Federal Court it is different, sir.
Q. Isn't it better to go ahead and get rid of anything that can be inconsistent with what you put in your report?
MR. SCHMIDT: I object to that, your Honor.
THE COURT: That is argumentative. Sustained.
* * * * * *
Q. You have access to tape recorders, right?
A. At my MBN office, yes, sir.
Q. Are you telling me that the Highway Patrol station doesn't have tape recorders?
A. No, sir, as far as I know, if it is, I didn't have access to one.
Q. You didn't ask for one did you?
A. I don't recall if I did or not, sir. As far as I remember, I didn't.
Q. Nor did you ask for a video camera?
A. As far as I know, they don't [sic] have one set up at the Highway Patrol at that particular time.
Q. You could call and have one brought right over to you, couldn't you?
A. I guess I could have, sir. Yes, sir.
Q. And that certainly could have helped remove any kind of questions that we have about doubt, memory, reliability, correct?
MR. SCHMIDT: I object to that argument.
THE COURT: Overruled.
Q. Correct?
A. It would be questions that you may have, yes, sir.
¶ 7. As the above colloquy shows, there is no proof that Captain Sandefer even took any notes. Even if he had, that would not be proof necessarily of any evidence favorable to the defense. Furthermore, we know of no authority in the jurisprudence of Mississippi making it a requirement that custodial interrogations be recorded either by audiotape, videotape, or contemporaneous notes. See Williams v. State, 522 So.2d 201, 208 (Miss.1988). The State argues that the Appellants were not entitled to a spoilation of evidence instruction based on the theory that the investigator should have taken notes of the interview. We agree with this assertion.

Sufficiency and Weight of the Evidence
¶ 8. The Appellants argue that the evidence presented by the State was insufficient to support the guilty verdict. The Appellants also argue that the investigator failed to document the substance of the interrogation, left defendants in the interrogation room alone with evidence, and failed to have the door panel where the cocaine was removed tested for fingerprints.
¶ 9. A motion for JNOV challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The standard for reviewing a denial of motion for JNOV is to consider all the evidence in the light most favorable to the verdict. Wetz v. State, 503 So.2d 803, 808 (Miss.1987); Harveston v. State, 493 So.2d 365, 370 (Miss.1986). We are bound to give the prosecution all favorable inferences that can be reasonably drawn from the evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss.1985); May v. State, 460 So.2d 778, 781 (Miss.1984). This Court may reverse only in an instance where in regard to one or more of the elements of the offense, a group of reasonable, fair-minded jurors could only find the *700 defendant not guilty. Harveston, 493 So.2d at 370; Fisher v. State, 481 So.2d 203, 212 (Miss.1985).
¶ 10. Captain Sandefer testified that upon interviewing Salazar-Rincon, Salazar-Rincon stated that the ladies, Becerra and Soza, had nothing to do with the cocaine and then Salaza Rincon reduced his statement to writing. Captain Sandefer also testified that after Salazar-Rincon wrote the statement, he told Captain Sandefer that Salazar-Rincon was going to make $4,000 for taking the van to a parking lot in New Orleans, leaving it for a couple of hours, and then picking it up later. Captain Sandefer stated that after interviewing each of the parties, he and Officer Johnny Fox decided to allow the ladies to leave and to charge Guillen, Salazar-Rincon, and Velez.[2] Further investigation revealed Guillen's fingerprint on the wrappings containing the cocaine.
¶ 11. Salazar-Rincon testified that neither he nor the girls knew anything about the drugs. He further stated that he never said that he was going to be paid $4,000. Salazar-Rincon stated that Soza was going to New Orleans to do some private dances for money. In addition, he also testified that he and Captain Sandefer never discussed Salazar-Rincon taking responsibility for the cocaine.
¶ 12. Guillen testified that during his interrogation, he told Captain Sandefer that the cocaine was not his, and then he pushed the box of cocaine away from him that was sitting on the table. Guillen further testified that the reason his fingerprints were on the wrappings of the cocaine is because Captain Sandefer pushed the cocaine in Guillen's face and Guillen pushed it aside. Captain Sandefer was recalled in rebuttal and testified that he did not pick up the box of cocaine and push it toward Guillen.
¶ 13. The Appellants had an opportunity at trial to point out all the weaknesses in the State's case. Our mission here is not to decide if the State could have done a better job at investigating this case. The test is not whether the State conducted a perfect and thorough investigation, but rather, if the evidence was sufficient to support the verdict of guilty. The jury heard all the evidence and found the testimony of Captain Sandefer more credible than that of Guillen or Salazar-Rincon. This finding was within their province. Groseclose v. State, 440 So.2d 297, 300-01 (Miss.1983).
¶ 14. No issue was raised concerning the fact that the cocaine was found in a vehicle not owned or rented by either of the Appellants. Therefore, we do not discuss the issue of constructive possession of the cocaine. We find that the evidence presented fully supports the verdict and affirm on this issue.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF THIRTY YEARS TO EACH APPELLANT TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] This is apparently a reference to the Jencks Act, 18 U.S.C. § 3500(b), which governs the defense right to certain discovery in federal criminal cases.
[2] The record is silent as to whether Velez was prosecuted.