BRIDGES, J., for the Court.
¶ 1. The grand jury of Coahoma County, Mississippi indicted McKennsey Austin on Count I, murder, Count II, drive-by shooting. On May 22, 2001, Austin was tried by a jury and was found guilty as to Count I, murder of Jones, and was found not guilty as to Count II, drive-by shooting. Austin was then sentenced to a term of life imprisonment within the custody of the Mississippi Department of Corrections. Feeling aggrieved by the conviction, Austin filed a motion for a JNOV, or in the alternative, a new trial, which was denied by the trial court on June 1, 2001. A notice of appeal was timely filed on June 4, 2001. Appointed counsel for Austin, Allan Shack-elford, filed a brief on behalf of Austin which contained a representation, pursuant to Turner v. State, 818 So.2d 1186, 1189(¶ 11) (Miss.2001), that the appeal was without merit. Austin has now filed his appeal through his attorney, Johnnie Walls.
*1225 STATEMENT OF THE ISSUES
I. WHETHER AUSTIN WAS DENIED A FAIR TRIAL BY THE TRIAL JUDGE’S DENIAL OF JURY INSTRUCTION D-4, A SELF DEFENSE INSTRUCTION.
II. WHETHER AUSTIN WAS DENIED A FAIR TRIAL BY THE TRIAL JUDGE’S DENIAL OF JURY INSTRUCTION D-5, AN ALTERNATE THEORY OF ACCIDENT AND MISFORTUNE.
FACTS
¶ 2. On the night of August 25, 2000, there was a party or social gathering held at the community center on Yates Street in Friars Point, Mississippi. There were a number of people at the party including, Corinthian Jones, a/k/a. “Cat Man” (the name of the victim appears in the indictment as “Crenthians” but also appears in numerous places as “Corinthian”), Nathan Goodlow, Calvin “Bone” Williams, Bervin Hopson, and McKennsey Austin, a/k/, “Lucky.”
¶ 3. Later that evening, shortly after midnight, Corinthian Jones was shot and killed near the community center. There were numerous eyewitnesses to the crime who also testified at the trial.
¶ 4. Nathan Goodlow, a friend of Jones and who was present at the scene, testified that earlier in the evening Jones grabbed Austin and choked him. After the altercation, Austin and Hopson left the party together. About an hour later they came back to the party. They started circling around Goodlow, Williams and Jones while circling the block several times. As they rode around, Jones shouted curse words at the vehicle in which Austin was riding. Jones started to approach the car with Williams while Goodlow followed behind them. It was then that Goodlow heard a shot, which he thought came from the window of the driver’s side of the vehicle, but Goodlow could not see who fired the shot. Austin then got out of the car from the driver’s side and Goodlow heard three or four more shots.
¶ 5. Calvin Williams, a close friend of Jones and an eyewitness, testified that he was with Jones from about 8:00 p. m. on the night of the shooting. He was also present when the fight broke out between Austin and Jones. He further testified that when Austin’s car came back, he and Jones were walking on a sidewalk when someone hollered, “Cat Man go to the car.” Williams did not go to the car; however, Jones did with his hands in his pockets. Austin then jumped out of the car and shot Jones. Williams thinks five or six shots were fired which came from the direction of Austin’s car. When he heard the shots Williams hit the ground and did not get up until the police arrived at the scene.
¶ 6. Bervin Hopson, Austin’s cousin, testified to the same thing the others had testified to except that Hopson said that Austin did nothing in response to Jones’s cursing and that Austin just made another loop through the party area. Hopson further recalled that after they made the loop, everything became strange. Hopson remembered Jones’s cursing at the car, and that Austin jumped out of the car. He did hear shots but did not see who fired them because he was trying to stop the car which was still in motion.
¶ 7. Dr. Steven Hayne, the state pathologist who performed the autopsy on Jones, found that Jones died of a gunshot wound to the back of the neck and that the trajectory was consistent with turning and running away from the shooter. He also testified that there was another gunshot wound that entered the back of the right arm.
*1226 ANALYSIS
I. WHETHER AUSTIN WAS DENIED A FAIR TRIAL BY THE TRIAL JUDGE’S DENIAL OF JURY INSTRUCTION D-4, A SELF DEFENSE INSTRUCTION.
¶ 8. Austin asserts that the trial judge erred in refusing a self-defense instruction and that he is consequently due a new trial.
¶ 9. This Court has held that in reviewing the denial of a jury instruction we must “consider not only the denial instruction but all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. A defendant is entitled to have instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence.” Guillen v. State, 825 So.2d 697, 698(¶ 5) (Miss.Ct.App.2002).
¶ 10. The trial judge refused instruction D-4 on the ground that it was not supported by the evidence. However, the judge modified an instruction which gave Austin a lesser-included-manslaughter-not-in-necessary-self-defense instruction. Also, the judge did not find that a self-defense instruction should be given in light of the testimony that Austin got out of the car, which was still in motion, and purposefully shot Jones, who sustained a shot to the back of his right arm and another shot to the back of the neck. There was also evidence that the victim, Jones, was running away from the shooter.
¶ 11. Also noteworthy is the fact that Austin’s appointed counsel, Allan Shackel-ford, filed a brief, in accordance with Turner, 818 So.2d at 1189(¶ 11), and stated that after scouring the record thoroughly for reversible error, he found none that would not be frivolous.
¶ 12. We find that based on the evidence presented in the record, the trial judge properly denied jury instruction D^4 for lack of an evidentiary foundation. Therefore, this issue is without merit.
II. WHETHER AUSTIN WAS DENIED A FAIR TRIAL BY THE TRIAL JUDGE’S DENIAL OF JURY INSTRUCTION D-5, AN ALTERNATE THEORY OF ACCIDENT AND MISFORTUNE.
¶ 13. Austin also claims that the trial judge was in error in his denial of a jury instruction based on accident or misfortune.
¶ 14. The record clearly shows the purposefulness of Austin’s acts and paints a picture of malice and a determination to kill. Austin’s excuses that Jones was yelling at him and walked up to the car with his hands in his pockets, do not excuse his actions. As stated in Hart v. State, “one does not have the right to kill another merely because he is afraid of him; nor may one kill another because he is afraid he will receive some bodily harm.” Hart v. State, 637 So.2d 1329, 1341 (Miss.1994) (quoting Shinall v. State, 199 So.2d 251, 259 (Miss.1967)).
¶ 15. Using the above standard of law, we find that the trial judge properly denied jury instruction D-5 for lack of an evidentiary foundation. Therefore, this issue is meritless.
¶ 16. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IM *1227 POSED. COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING AND SOUTHWTCK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. McMILLIN, C.J., AND IRVING, J. CONCUR IN RESULT ONLY.