914 So.2d 1239 (2005)
Jonathan ANDERSON a/k/a Jonathan Allen Anderson, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00957-COA.
Court of Appeals of Mississippi.
November 15, 2005.
*1240 Daniel Christopher Jones, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. This case is on appeal from the Circuit Court of Simpson County in which Jonathan Anderson was convicted of the crime of murder and sentenced to life in prison in the custody of the Mississippi Department of Corrections. Following his conviction, he appeals to this Court raising three points of error:
I. THE STATE OF MISSISSIPPI FAILED TO PROVE THAT ANDERSON HAD THE INTENT TO KILL JOHN MILTON PACE.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT ANDERSON'S MANSLAUGHTER JURY INSTRUCTIONS.
III. THE TRIAL COURT ERRED IN DENYING ANDERSON'S MOTION FOR JUDGEMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL.

STATEMENT OF THE FACTS
¶ 2. On February 16, 2003, the partially burned and decomposing body of John Milton Pace was found in a dump in Simpson County. Jonathan Anderson was arrested for the crime following notification by Terry Hinton, Anderson's sister, to the Simpson County Sheriff's Department that Anderson had admitted to her that he had "shot a black man in the back of the head, [and] burned him and the car."
¶ 3. Through the investigation by the sheriff's department, the events on the night of February 8, 2003, were uncovered. Anderson and his girlfriend, Roberta Luebke (Luebke), met at a gas station in New Hebron in order to go to "Dope Road." They walked one to two hours to Dope Road where they met Pace at a trailer. While at the trailer the trio engaged in the use of drugs. Luebke smoked marijuana while Pace and Anderson did crack cocaine.
¶ 4. After the trio finished with their period of drug use they went riding in Pace's car. Anderson was driving with Pace in the front passenger seat and Luebke in the rear seat. At some point during the period of riding, Anderson stopped by his parents' home where he obtained a shotgun. When Anderson returned to the car, he and Luebke exchanged *1241 places, while Pace remained in the front passenger seat.
¶ 5. Luebke testified that while she was driving, the gun went off and Pace was shot in the head and the glass of the passenger door shattered. After the shooting, Anderson drove the car to a dump in Simpson County where Pace's body was removed from the car and his shoes and socks were removed. Anderson then covered the body with leaves, trash, and a portion of the passenger seat he cut with his pocket knife from the car. Anderson then set Pace's body on fire. Anderson then drove the car to Jefferson Davis County where he removed a flashlight and a rifle owned by Pace. Anderson then stuffed a sock in the gas tank and set the car on fire. The car was burned in the ensuing fire.
¶ 6. The couple, using the flashlight, then began to walk back to Anderson's parents' house in Simpson County. When Anderson determined that the rifle taken from the car did not work, he threw it down. He kept the shotgun and broke it down into three parts. Anderson cut a hole in the liner of his jacket and placed the rifle, the flashlight and his pocket knife inside the liner and wrapped it into a bundle. Anderson removed the shotgun shell from the gun and gave it to Luebke to dispose of. She placed it in her jacket pocket. Before the couple reached Anderson's parents' home they passed Fred Berry's (Anderson's grandfather) house where Anderson hid the bundle beneath some gravel. At some point later Anderson moved and buried the bundle ten feet from a deer stand.
¶ 7. On the evening of March 13, 2003, Anderson made the admission to his sister that lead the investigators to him. Hinton informed the sheriff's department on March 14, 2003. Deputy Bernard Gunter interviewed Luebke on March 16 and 17. During the initial questioning, on March 16, Luebke denied knowing anything about the murder but on March 17 she acknowledged her involvement and lead the deputy to her mother's house where her jacket was found with the shotgun shell in the pocket. A search was then conducted of the Berry property where the jacket with the gun, flashlight, and pocket knife were found.
¶ 8. Anderson was arrested, charged and convicted of the murder of Pace pursuant to Mississippi Code Annotated § 97-3-19(1)(a) (Rev.2000).

LEGAL ANALYSIS

I. THE STATE OF MISSISSIPPI FAILED TO PROVE THAT ANDERSON HAD THE INTENT TO KILL JOHN MILTON PACE.

STANDARD OF REVIEW
¶ 9. In reviewing any challenge to the sufficiency of the evidence of guilt in a criminal trial, the appellate court is obligated to view the evidence in the light most favorable to upholding the verdict. Norman v. State, 725 So.2d 247 (¶ 14) (Miss.Ct.App.1998). We ought to intercede only in those instances where, upon viewing the evidence in that light, we are convinced that a reasonable juror considering all the evidence could, because of the deficiency of the State's proof as to one or more of the critical elements of the crime, only find the defendant not guilty. Flowers v. State, 726 So.2d 185(¶ 8) (Miss.Ct. App.1998).

DISCUSSION
¶ 10. Anderson argues that the State did not produce sufficient evidence to prove that he acted with deliberate design as required by the simple murder statute. Mississippi Code Annotated § 97-3-19(1)(a) provides that "[t]he killing of a human being without the authority of *1242 law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being." To argue this point Anderson directs us to our opinion in Coffield v. State, 749 So.2d 215 (Miss.Ct.App. 1999). He argues that nothing in the record shows his intent to kill Pace as required by this Court in Coffield. We disagree and find our opinion in Coffield as directly on point, so much so that we quote directly from that opinion.
The Mississippi Supreme Court has observed that evidence of premeditation, as contemplated by the phrase "deliberate design" in our present murder statute, is often not capable of direct proof. See, e.g., Higgins v. State, 725 So.2d 220 (¶ 26) (Miss.1998)(stating malice may be inferred from use of a deadly weapon); Strong v. State, 600 So.2d 199, 202 (Miss.1992)(finding reasonable inferences that flow from facts of killing established "deliberate design"); Porter v. State, 57 Miss. 300, 302 (1879)(stating proof by circumstances is often the only proof accessible and is "frequently of the highest credibility"). It is, thus, entirely proper that "deliberate design" be proven by the inferences reasonably drawn from the objective facts of the incident itself. Id.

Further, the court has noted that the design to kill another need not be of any particular duration, so long as there is evidence that the defendant formed the requisite intent to purposely kill another in advance of the actual killing. Graham v. State, 582 So.2d 1014, 1018 (Miss.1991); Hudson v. State, 185 Miss. 677, 685-86, 188 So. 561, 562-63 (1939).
Coffield, 749 So.2d at 217-18 (¶¶ 10-11).
¶ 11. The State presented evidence that proves Anderson had deliberate design in his actions. Anderson did use a deadly weapon, a shotgun, in killing Pace. As we follow the "flow of facts" deliberate design can be established. The trio stopped by Anderson's home to get the shotgun, Anderson moved from the driver's seat to the backseat, and Pace was killed by a shot from that shotgun to the back of the head.
¶ 12. From the testimony at trial, an inference can be made that Anderson formed the requisite intent to kill Pace. According to Luebke's testimony, at some point in the day Pace had touched her in places he should not have. Anderson did not react at that time, but later in the day he did retrieve the shotgun from his parents' home. Additionally, testimony at trial indicated that Anderson, who was white, did not like black people. There is significant time from the time Anderson and Luebke met Pace through the time Pace was killed for Anderson to form the intent to kill.
¶ 13. Anderson then refers us to our decision in Carter v. State, 845 So.2d 748 (Miss.Ct.App.2003), to argue that there were no witnesses to the murder. His argument is that Luebke heard the shotgun go off, but did not see Anderson actually shoot Pace. There were only three people in the car at the time the shot was fired: Pace the victim, Luebke, the driver, and Anderson in the backseat with the shotgun. A reasonable inference can be made, from these facts, that Anderson shot Pace.
¶ 14. Finding that the State met its burden to prove the elements of simple murder as provided by Mississippi Code Annotated § 97-3-19(a)(1), we find this point of error is without merit.

II. THE TRIAL COURT ERRED IN REFUSING TO GRANT ANDERSON'S MANSLAUGHTER JURY INSTRUCTIONS.

STANDARD OF REVIEW
¶ 15. This Court has held that in reviewing the denial of a jury instruction *1243 we must "consider not only the denied instruction but all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. A defendant is entitled to have instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence." Guillen v. State, 825 So.2d 697, 698 (¶ 5) (Miss. Ct.App.2002).

DISCUSSION
¶ 16. Anderson contends that he was entitled to a jury instructions regarding the lesser-included offense of manslaughter. We do not agree. Anderson's requested manslaughter jury instructions were for "heat of passion" murder.
Heat of passion has been defined as "a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror." Underwood v. State, 708 So.2d 18, 36 (Miss.1998). The passion felt by the person committing the act "should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation." Graham v. State, 582 So.2d 1014, 1018 (Miss.1991).
McClendon v. State, 748 So.2d 814, 817(¶ 13)(Miss.Ct.App.1999).
¶ 17. No evidence was presented that Anderson acted in the heat of passion. There is no evidence in the record of a sudden provocation. There may have been inappropriate touching of Luebke by Pace earlier in the day, but some time had passed between that touching and Pace's death. Nothing else in the record provides a basis for the granting of a jury instruction for heat of passion manslaughter.
¶ 18. Finding no error by the trial judge in denying Anderson's jury instruction on heat of passion manslaughter, we find this point of error is without merit.

III. THE TRIAL COURT ERRED IN DENYING ANDERSON'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL.

STANDARD OF REVIEW
¶ 19. Our standard of review of issues related to motions for JNOV and/or new trial has been stated as follows:
Challenges to the sufficiency of the evidence (raised by motions for directed verdict and for JNOV) and challenges to the weight of the evidence (raised by motions for a new trial) raise similar issues. This Court has set forth the standards for the challenges to the former as follows: Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee [the State], giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant [the defendant] that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial *1244 evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Cousar v. State, 855 So.2d 993, 998(¶ 14) (Miss.2003) (citations omitted).
¶ 20. A motion for a new trial challenges the weight of the evidence. Jones v. State, 635 So.2d 884, 887 (Miss. 1994). We may reverse only where, taking the State's evidence as true, the trial court's failure to grant a new trial was an abuse of discretion and the verdict amounts to an unconscionable injustice. Id.

DISCUSSION
¶ 21. Anderson contends that reasonable and fair-minded jurors could not have found him guilty of the crime of murder under the facts presented at trial and that he should be granted a motion notwithstanding the verdict. In order to support this contention, Anderson points to the testimony of Hinton, his sister, and Dr.Steven Hayne, the pathologist.
¶ 22. Hinton testified that Anderson had told her that he had killed Pace because a drug deal had gone bad. With regard to the testimony of Dr. Hayne, Anderson states that Dr. Hayne testified that the bullet entered the right side of the head and exited through the left side and that this clearly shows that Pace was shot by someone outside the car. Anderson also states that Dr. Hayne testified that Pace could have been in any position other than sitting in the car. Anderson also points to Luebke's statement in an earlier interview by the sheriff's department that they had to put the body back in the car. Anderson contends that all this evidence clearly points to his innocence.
¶ 23. After reviewing the record of the trial we do not agree with Anderson that fair-minded jurors could not have found him guilty. The only testimony that Pace had been killed in a bad drug deal was that of Hinton and that evidence was one single statement. The testimony of Dr. Hayne provided more for the jury to consider than what Anderson has drawn to this Court's attention. Dr. Hayne testified that he could not conclusively determine the direction from which the shot was fired. His testimony was that the shot could have been fired from right to left as well as from left to right. He testified that there had been extensive damage to the body by the length of time between the death and discovery, by burning and by animal and bacterial degradation. With regard to the statements by Luebke about putting the body back in the car, she clarified the statements at trial by saying she had misplaced her words. The actual statement was "So, we drove around and found a place to put the body in the car." This is not a statement that the body was outside the car, but a statement that the couple was looking for a place to dispose of the body that was in the car.
¶ 24. Alternatively, Anderson contends that he is entitled to a new trial based on his statements to Luebke after the murder, the fact that she had the shotgun shell in her jacket pocket, and the fact that the shotgun found on his grandfather's property was not conclusively determined to be the murder weapon. We do not agree. This Court will only overturn the trial court and order a new trial if convinced that the verdict is contrary to the overwhelming weight of the evidence. Jesco, Inc., v. Whitehead, 451 So.2d 706, 714 (Miss.1984).
¶ 25. After Pace had been killed, Anderson repeatedly told Luebke that it would "be okay" and not to worry. *1245 Anderson contends that these statements are very telling to the fact that Luebke killed Pace and not him. Anderson argues that logic would dictate that had Anderson killed Pace, Luebke would be telling him that it would "be okay" and not to worry instead of Anderson comforting Luebke. Anderson goes further by stating that Luebke killed Pace while Anderson was passed out from taking too many drugs. Neither logic nor the evidence supports either of these contentions.
¶ 26. Next, Anderson argues that Luebke having the shotgun shell in her jacket pocket does not make any sense if he had killed Pace. The testimony of Luebke is that when Anderson broke the gun down into its three parts he handed her the shell to dispose of. He argues that had he been the one to kill Pace he would have tossed the shell down, considering the area was well hunted and the shell would be lost among the other shells on the ground.
¶ 27. Finally, Anderson argues that the shotgun found on his grandfather's land was not positively identified as the shotgun that killed Pace. He presents the testimony of Starks Hathcock, a state forensic scientist specializing in the field of firearms identification and ballistics. Hathcock testified that he could not positively identify the shotgun offered into evidence as the one that killed Pace.
¶ 28. All of Anderson's evidence and the evidence presented by the State was before the jury during their deliberations. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence for the jury to find that Anderson committed the murder of Pace. When all the evidence is viewed, the evidence is of such quality that "reasonable and fair-minded jurors" could reach a verdict of guilty. When evaluating a verdict we will not go behind the verdict of the jury to determine whether the evidence they chose to believe was or was not the most credible. Conley v. State, 790 So.2d 773, 807 (¶ 138) (Miss.2001). The jury is the ultimate finder. Id. There is sufficient evidence to support the jury's findings and the verdict does not produce an unconscionable injustice. The trial court did not abuse its discretion by not granting a new trial.
¶ 29. Finding that reasonable and fair-minded jurors could have determined Anderson's guilt from the evidence presented at trial and that the trial court did not abuse its discretion in denying a new trial, we find this point of error is without merit.

CONCLUSION
¶ 30. Finding no error, we affirm Anderson's guilty verdict.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
KING, C.J., LEE, P.J., BRIDGES, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.