943 So.2d 66 (2006)
Travis LIVINGSTON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-02455-COA.
Court of Appeals of Mississippi.
May 30, 2006.
Rehearing Denied September 12, 2006.
*68 Rex K. Jones, E. Lindsay Carter, Hattiesburg, attorneys for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Travis Livingston was found guilty by a Lamar County Circuit Court jury of the murder of John Merritt and the kidnaping of Michelle Livingston. He received a sentence of life imprisonment for the murder charge, and a consecutive thirty *69 year sentence for the kidnaping charge. He now appeals, raising several issues. Finding no error, we affirm.

FACTS
¶ 2. After a rocky marriage and several separations, Michelle Livingston (Mikki) separated from her husband, Travis Livingston (Livingston), purchased her own home in Sumrall, and filed for divorce. Livingston stayed with friends and relatives and worked in Starkville. He kept in frequent contact with Mikki during the separation. Although Mikki made it clear that she was ready to go on with her life and see other people, Livingston remained hopeful that they could work through their problems. He claims that on the weekend of December 13, 2003, the two had plans to spend the weekend together in either Jackson or Vicksburg.
¶ 3. After separating from her husband, Mikki subscribed to an on-line dating service, where she began chatting with John Merrit of Destin, Florida. After weeks of communicating via the internet and telephone, the two decided to meet. On the evening of December 12, 2003, Mikki and Merritt met at a Gulfport restaurant. The date went well, and Mikki invited Merrit to stay the night at her home in Sumrall. Mikki left her car in Gulfport and rode with Merrit to Sumrall.
¶ 4. The next morning, the pair drove to a nearby store to pick up some breakfast. While they were gone, Livingston arrived at Mikki's house. He later testified that the reason he drove to her house from Starkville was because he had been unable to reach her by telephone and the two had plans to spend the weekend together. When he arrived, he found the door unlocked and decided to go in and gather some of his belongings. Upon entering the house he saw a pair of men's shoes on the counter. He also saw a man's bag with another pair of shoes in a bedroom and decided he should leave.
¶ 5. When Mikki and Merritt returned to Mikki's home, they saw Livingston in his truck in the circular driveway. Instead of driving away, Livingston drove up to Merritt's truck, blocking it in. Livingston then emerged from his truck, walked over to Merritt's truck, opened his truck door, and shot three times. Two bullets struck Merritt, one above his left eyebrow and the other above his left ear, while one bullet struck Mikki in the neck.
¶ 6. Livingston took Mikki and drove to a remote location underneath a bridge. During the drive and upon arriving underneath the bridge, Livingston repeatedly threatened to kill Mikki and himself. He called his brother, Gary Livingston, and told him what had happened and that he was going to kill himself. After a failed attempt at calling for help on Livingston's cell phone, Mikki attempted to escape, but did not get far before Livingston forced her back into his truck. At one point, Livingston began removing Mikki's clothes so that he could examine her and determine whether she had engaged in sexual relations with Merritt. Livingston would later testify that he was just changing Mikki's clothes because she had busted her pants when she slipped in the mud. After much praying and pleading from Mikki, Livingston drove to Gary Livingston's home. Shortly afterward, first responders came to Mikki's aid, and Livingston was taken into custody.

ISSUES AND ANALYSIS
I. Whether the trial court erred in denying the motion for a mistrial because of the failure of the State to furnish to the defense the substance of the oral statements of Christopher Ray and Jim Ray.
¶ 7. Livingston claims that the State violated Uniform Circuit and County *70 Court Rule 9.04 by failing to disclose prior to trial a synopsis of the anticipated testimony of Jim and Christopher Ray. Several days before trial, Livingston's attorneys contacted the Rays to get a statement from them, but they declined to speak with Livingston's attorneys. Livingston declined to obtain the court's assistance in procuring Jim and Christopher Ray's cooperation. At trial, Jim Ray testified that on the morning of December 13, 2003, after hearing a loud commotion outside, his wife, Sharon, ran inside saying that someone had been shot. Jim then contacted 911, and while on the phone he saw Livingston pull Mikki out of Merritt's truck. He then saw Livingston's truck exit the driveway. Christopher Ray testified that he saw Livingston block Merritt's truck in the driveway with his own truck. Christopher then saw Livingston emerge from his truck, walk to Merritt's truck, open Merritt's door, shoot Merritt, and walk around the truck and grab Mikki by the arm. He testified that he did not see Merritt pull her out of the truck because he ran to dial 911 for his dad. Their testimony revealed nothing to which Sharon Ray had not already testified, and Livingston had obtained Sharon Ray's statement prior to trial.
¶ 8. This Court employs an abuse of discretion standard when reviewing a denial of a motion for mistrial. Johnson v. State, 914 So.2d 270, 272(¶ 7) (Miss.Ct.App. 2005). "The essential purpose of Rule 9.04 is the elimination of trial by ambush and surprise." Wimberly v. State, 839 So.2d 553, 558(¶ 20) (Miss.Ct.App.2002) (citing Robinson v. State, 508 So.2d 1067, 1070 (Miss.1987)). Unless a criminal defendant makes a contemporaneous objection to the admission of previously undisclosed evidence, the issue is procedurally barred on appeal. Gary v. State, 796 So.2d 1054, 1056(¶ 6) (Miss.Ct.App.2001)(citing Box v. State, 437 So.2d 19, 23 (Miss.1983); De La Beckwith v. State, 707 So.2d 547, 574(¶ 99) (Miss.1997); Nathan v. State, 552 So.2d 99, 108 (Miss.1990)).
¶ 9. The testimony of both Jim and Christopher Ray was admitted into evidence without objection from Livingston. It was not until Officer Joe Loftin testified that he had spoken with Jim and Christopher when responding to the 911 call did Livingston's attorneys raise the issue before the judge. Accordingly, this issue is procedurally barred.
II. Whether the trial court erred in excluding evidence of the victim's drug usage
III. Whether the trial court erred in excluding evidence of Livingston's diminished perception at the time of the murder.
¶ 10. We also employ the abuse of discretion standard in reviewing a trial court's decision to admit or exclude evidence. Al-Fatah v. State, 916 So.2d 584, 591(¶ 21) (Miss.Ct.App.2005). This Court will not reverse based on a decision to exclude evidence "unless the party against whom evidence has been erroneously received has been denied a substantial right." Russell v. State, 607 So.2d 1107, 1114 (Miss.1992).
¶ 11. Livingston sought to offer into evidence a report from the Mississippi Crime Lab which showed that Merritt's urine screened positive for marijuana. The trial court excluded the admission of the report but allowed Livingston to make a proffer. Livingston claimed that this evidence would support his theory that Merritt was the initial aggressor because, according to defense counsel, "there are some studies out there that there's a correlation between marijuana use and violence. . . ." However, the crime lab report indicated that an insufficient sample volume *71 was submitted to perform a confirmatory drug analysis. Furthermore, defense counsel admitted that they had no expert to testify about the alleged correlation between marijuana consumption and violence. Finally, the trial court stated that it could not take judicial notice of the effects of marijuana as they relate to aggressiveness. We find that the trial court did not err in excluding the report since Livingston failed to sufficiently prove its relevance.
¶ 12. Livingston next argues that the trial court erred in excluding the proposed testimony of Dr. Beverly Smallwood, a licensed psychologist who evaluated Livingston prior to trial. Dr. Smallwood's forensic opinion was that although Livingston knew right from wrong when he shot Merritt, Livingston was in a state of diminished perception and capacity due to the heightened state of arousal and fear he was experiencing at the time.
¶ 13. Mississippi does not recognize diminished capacity as a defense to a criminal charge. Smith v. State, 880 So.2d 1094, 1097(¶ 6) (Miss.Ct.App.2004) (citing Cannaday v. State, 455 So.2d 713, 720 (Miss.1984)). Livingston pursued three defenses at trial: accident, self-defense, and heat of passion manslaughter. A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm. Hart v. State, 637 So.2d 1329, 1339 (Miss.1994). Accordingly, Livingston's "own particular mental frailties" would not have assisted the trier of fact in deciding the merit of his self-defense claim. Id. Dr. Smallwood's opinion would also be irrelevant to Livingston's accident defense. Dr. Smallwood's opinion also could not aid Livingston's claim of heat of passion manslaughter, which we discuss below.

IV. Whether the trial court erred in refusing a heat of passion manslaughter instruction
¶ 14. This Court employs the following standard when reviewing a trial court's denial of a jury instruction,
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. When so read, if the instructions fairly announce the law and create no injustice, we will not find reversible error.
Jones v. State, 912 So.2d 501, 505-06(¶ 13) (Miss.Ct.App.2005) (quoting Harris v. State, 861 So.2d 1003, 1012-13(¶ 18) (Miss. 2003); Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002)).
¶ 15. Heat of passion manslaughter is "the killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss.Code Ann. 97-3-35 (Rev.2000). Our courts have defined heat of passion as,
a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Anderson v. State, 914 So.2d 1239, 1243(¶ 16) (Miss.Ct.App.2005) (quoting Underwood *72 v. State, 708 So.2d 18, 36(¶ 54) (Miss.1998)).
¶ 16. The trial court properly denied Livingston's proposed jury instruction because it lacked foundation in the evidence. Mikki and Livingston's divorce was weeks from being finalized. Each had expressed to the other that they were going on with their lives and seeing other people. When Livingston encountered Mikki and Merritt, Merritt in no way provoked Livingston. Three eyewitnesses testified that Livingston blocked in, then walked over to Merritt's truck, opened Merritt's door, and shot three times. Not only was there no adequate provocation to warrant a heat of passion manslaughter instruction, but also there was no violent, uncontrollable rage at the time of the incident. On cross-examination, the following exchange between the prosecutor and Livingston occurred:
Q. Did that make you mad, Mr. Livingston when you saw the man's shoes?
A. No 
Q. And you decided to go back on out of that house when you saw that; right?
A. Right, I decided to leave.
Q. Did it make you mad?
A. I was not  I was not angry enough to fight no one or do anything like that.
Q. So it's your testimony that it didn't bother you at all?
A. No, I'm not saying it didn't bother me. I said anybody would be upset, but not to the extreme of going overboard with something, no.
This issue is without merit.
V. Whether the murder conviction is against the overwhelming weight of the evidence.
¶ 17. A challenge to the weight of the evidence succeeds only if a verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). Since three witnesses testified that they saw Livingston murder Merritt, and a fourth witnessed the circumstances surrounding the murder, we cannot say that the jury's verdict resulted in an unconscionable injustice. This issue is without merit.
VI. Whether the trial court erred in refusing Livingston's request for a peremptory instruction on the kidnaping charge.
¶ 18. A challenge to legal sufficiency succeeds only if a review of the evidence in the light most favorable to the verdict reveals that no rational juror could have found that the State proved each element of the crime charged beyond a reasonable doubt. Bush, 895 So.2d at 843(¶ 16). Livingston was charged with forcibly seizing and confining Mikki, with intent to cause her to be secretly confined or imprisoned against her will in violation of Mississippi Code Annotated § 97-3-35 (Rev.2000). Mikki testified that she was forcibly seized and confined and held against her will. The Rays' testified that they saw Livingston forcibly seize, confine, and carry away Mikki. We find that there was sufficient evidence for a rational juror to find that the State proved beyond a reasonable doubt that Livingston kidnapped Mikki.
¶ 19. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION *73 OF COUNT III KIDNAPING AND SENTENCE OF THIRTY YEARS WITH FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIFTEEN YEARS UNDER POST-RELEASE SUPERVISION, WITH A FIVE YEAR SUPERVISION PERIOD, WITH BOTH SENTENCES RUNNING CONSECUTIVELY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.