936 So.2d 471 (2006)
Michael ANTHONY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-02228-COA.
Court of Appeals of Mississippi.
August 15, 2006.
*473 Daniel Christopher Jones, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Following a jury trial, Michael Anthony was convicted of murder and aggravated assault. The Simpson County Circuit Court sentenced Anthony to life for the murder conviction and twenty years for the assault conviction, the twenty years to run concurrent to the life sentence, and both to be served in the custody of the Mississippi Department of Corrections. Aggrieved, Anthony appeals and asserts the following errors, which we quote verbatim:
1. WHETHER THE TRIAL COURT ERRED IN ALLOWING MR. ANTHONY'S VIDEOTAPED STATEMENTS AND HIS MIRANDA WARNINGS TO BE ENTERED INTO EVIDENCE WHEN MR. ANTHONY, A MINOR, DID NOT FULLY COMPREHEND THE WAIVER OF HIS RIGHTS.
2. WHETHER THE TRIAL COURT ERRED IN DENYING MR. ANTHONY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On February 7, 2003, Anthony and his friend, Jaquan Clemente, were picked up by Jeffrey Johnson and Johnson's cousin, Bryant Tillis. Johnson and Tillis had allegedly come to Mendenhall to look at a Camaro and some rims that Anthony had told them about. Although the State's version of events differs from Anthony's version, what is undisputed is that the car, driven by Johnson and containing Anthony, Clemente, and Tillis, was driven to a remote rural area. A dispute of some kind arose, and Anthony shot Johnson once and shot Tillis twice. Johnson survived and was able to make his way to a road, where he was picked up by a passer-by and taken to a hospital for treatment. Tillis died as a result of his wounds.
¶ 4. Anthony gave two videotaped statements regarding the shooting. In the first statement, Anthony stated that he shot Johnson because Johnson had made sexual advances toward him. Anthony denied shooting Tillis at that time. In the second statement, Anthony admitting shooting both Johnson and Tillis. He stated that he shot Johnson by accident, admitted that there was no attempted sexual assault, and could give no reason as to why he shot Tillis. Anthony's trial testimony indicated that the shooting was either an accident or was in defense of Clemente, who, according to Anthony, was being choked by Tillis. Clemente did not testify at trial, and Johnson testified that Anthony shot him and then shot Tillis while Tillis was attempting to get away from Anthony.
¶ 5. Additional facts, as necessary, will be related during our discussion of the issues.

*474 ANALYSIS AND DISCUSSION OF THE ISSUES

1. Waiver of Rights
¶ 6. In his first point of error, Anthony contends that the court erred in allowing his videotaped statement and Miranda warnings into evidence. The basis for Anthony's argument is that he was confused at the time and was a minor, and therefore was unable to fully comprehend his rights.
¶ 7. The admissibility of statements made by minors has been addressed by the Mississippi Supreme Court in Dancer v. State, 721 So.2d 583 (Miss.1998). The defendant in Dancer was a thirteen-year-old who "had no prior involvement with the criminal justice system and [who] performed at a low national average on standardized achievement tests." Id. at 586(¶ 11). The court determined that the trial court did not err in ruling that the defendant's statement given during custodial interrogation was admissible, despite the defendant's tender years and lower-than-average intelligence. Id. at 589(¶ 27). The Dancer court ultimately held that "an inquiry into the totality of the circumstances is necessary" to determine the admissibility of a statement given by a juvenile during custodial interrogation. Id. at 587(¶ 19) (citing Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). The Mississippi Supreme Court noted that a court's determination regarding a juvenile's statement must be "manifestly in error or contrary to the overwhelming weight of the evidence" in order for us to reverse the decision of a trial court to admit the statement of a juvenile given during custodial interrogation. Id. at 588(¶ 22) (citing Foster v. State, 639 So.2d 1263, 1281 (Miss.1994)).
¶ 8. Section 43-21-151 of the Mississippi Code specifies that juveniles are entitled to the protections of youth court generally, but "[a]ny act attempted or committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death, will be in the original jurisdiction of the circuit court." Miss.Code Ann. § 43-21-151(1)(a) (Supp.2005). Therefore, the legislature has specifically elected to treat juveniles facing life imprisonment or death as adults for the purposes of prosecution. This section and Dancer, among other cases, makes it clear that juveniles in Mississippi are not afforded any additional protections during custodial interrogation.
¶ 9. In the case at bar, no motion was ever filed by the defense for a hearing on the admissibility of Anthony's statement, although an objection was lodged by the defense during the testimony of Bernard Gunter, an investigator with the Simpson County Sheriff's Department. The court sent the jury out of the room to deal with the objection, and Anthony's attorney was given the opportunity to voir dire Gunter concerning the voluntariness of Anthony's Miranda waiver. The court specifically asked Anthony's attorney, "Do you have any evidence you would like to put on, Mr. Jones?" Anthony's attorney responded that he did not have any evidence to put on. Thereafter the objection was overruled, presumably since no evidence or argument had been provided as to why the waiver should not be admitted into evidence. Later during Gunter's testimony, an objection was raised to the admissibility of Anthony's second Miranda waiver, given during his second interview. Again, Anthony's attorney was given the opportunity to voir dire Gunter. The court asked whether Anthony's attorney had any evidence to present regarding the waiver's admissibility, and again Anthony's attorney responded that he had none. The court then went a step further and inquired, "Do you have any law that you can *475 show me about minors waiving their rights?" Anthony's attorney responded, "No, Your Honor, I do not." Thereafter, the court overruled the objection. Anthony's videotaped statements were later played in court, and Anthony's attorney lodged the same objections, again without providing even a scintilla of argument or evidence as to why the statements should not be admissible.
¶ 10. When asked during direct examination, "Did you understand what you were  the Waiver of Rights  did you really understand all of that," Anthony testified, "No, sir. I really didn't. I didn't  I didn't understand it because I never had anything to talk about the law system." However, this was the only evidence introduced indicating that there was any question as to the admissibility of Anthony's waiver of his rights. Both of the Miranda forms that Anthony had been given were signed, indicating that his rights had been read to him and that he understood those rights. Furthermore, his grandparents were present during the first interview, and also signed the waiver. Anthony's testimony that he did not understand the rights that he was waiving is refuted by his signing of his Miranda waiver, by his grandparents signing of his waiver, and by the testimony of Gunter, who testified that he informed Anthony of his rights and that Anthony waived those rights freely and voluntarily. Gunter also testified during the second objection that he believed that Anthony understood his rights as they had been read to him.
¶ 11. Given the record before us, it is impossible for us to say that the lower court's determination as to the admissibility of Anthony's waivers and statements was "manifestly in error" or "contrary to the overwhelming weight of the evidence." Under Mississippi law, Anthony's age at the time of the statements is not a sufficient basis for exclusion of the statements. Despite being given the opportunity to do so before the introduction of the statements, Anthony produced no evidence or argument against the admissibility of the statements and waivers. No evidence was introduced at the time to indicate that Anthony did not understand his rights. Anthony's later testimony that he did not understand his rights is not sufficient to make the court's determination against the overwhelming weight of the evidence. Anthony's brief before this court even states: "The Appellant argues that it may have been legal under Mississippi law, but it was in no way right. . . ." However, this Court must decide cases based on Mississippi law, not under what we might perceive to be "right." Therefore, this issue is without merit.

2. Sufficiency of the Evidence
¶ 12. In reviewing the sufficiency of the evidence supporting a conviction, we will not reverse as long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (citations omitted). We will review the evidence in the light most favorable to the State. Id. at 843(¶ 17). The essential elements of murder are "[t]he killing of a human being without the authority of law by any means. . . [w]hen done with deliberate design. . . ." Miss.Code Ann. § 97-3-19(1)(a) (Supp.2005). Aggravated assault is defined as attempting "to cause or purposely or knowingly caus[ing] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss.Code Ann. § 97-3-7(2)(b) (Supp.2005).
¶ 13. Anthony claims that the elements of aggravated assault were not met because he "did not attempt to cause bodily *476 injury" to Johnson. Anthony contends that the evidence "clearly show[s] that Michael and Jeffery were tussling and the gun just went off." Anthony also argues that he "did not possess the gun." He further argues that "Jeffery did not suffer serious bodily injury" because the doctor who treated Johnson at the hospital testified that he was not in hemodynamical distress, was talking, was moving his extremities, was not in a lot of pain, was not in shock, and had acceptable blood pressure levels. Anthony contends that the jury "simply got Count II of the Indictment wrong." Anthony claims that the elements of murder were not proven because he did not intend to shoot Tillis, but simply wanted Tillis off of Clemente. Anthony recognizes that the jury was given an instruction regarding the elements of murder and an instruction dealing with the defense of defense of another, but maintains that "reasonable and fair-minded jurors would have found Michael not guilty had they genuinely looked at the evidence. . . ."
¶ 14. We note at the outset that the jury sits as the trier of facts in evidence, and as such is "charged with the duty of judging credibility." Jones v. State, 920 So.2d 465, 472(¶ 22) (Miss.2006) (citations omitted). As stated in Jones: "Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict." Id. at 472-73(¶ 22) (quoting Jackson v. State, 614 So.2d 965, 972 (Miss.1993)).
¶ 15. As to the aggravated assault, the evidence did not "clearly show" that Anthony and Johnson were fighting over the gun when it went off. That version of events is what happened according to Anthony, and Anthony alone. Johnson testified that Anthony demanded money from him and then proceeded to shoot him. Johnson testified that he did not own any gun, including the gun that Anthony shot him with. Instead, Johnson's testimony indicated that Anthony must have brought the gun in the car. Faced with two versions of what happened from two different witnesses, the jury was entitled to believe whichever of the witnesses it found most credible. The same is true of Anthony's contention that he did not "possess" the gun. There was clearly evidence from which a reasonable and fair-minded jury could conclude that Anthony possessed the gun and shot Johnson with the gun, without any struggle between the two.
¶ 16. As to Anthony's contention that Johnson did not suffer serious bodily injury, the statute defining aggravated assault does not require that a victim actually suffer serious bodily injury. Section 97-3-7(2)(b) makes it clear that any assault with a deadly weapon that causes any bodily injury, whether severe or not, is aggravated assault. There is no doubt that the gun that Anthony shot Johnson with qualifies as a "deadly weapon." There is also no doubt that Johnson suffered "bodily injury," as he had to have emergency care, spent several days in the hospital, and had to have surgery to remove the bullet that Anthony had shot him with. Anthony's contention that the evidence was not sufficient to show "bodily injury" by use of a "deadly weapon" is without merit. Sufficient evidence of the elements of aggravated assault was produced from which a reasonable and fair-minded jury could find Anthony guilty.
¶ 17. Although Anthony presents as fact his claim that he shot Tillis only to get Tillis off Clemente, Johnson testified *477 otherwise at trial. Johnson testified that, after he had run off, he turned to see what had happened and saw Anthony shoot Tillis, who attempted to run away from Anthony, but whom Anthony chased and shot again. Only Anthony's testimony indicated that he shot Tillis to get him off Clemente. Faced with conflicting testimony as to how and why Tillis was shot, the jury was entitled to draw its own conclusion as to which telling of the events was more credible. Having done so, this Court will not disturb the jury's decision. There was sufficient evidence from which a reasonable and fair-minded jury could find that Anthony was guilty of all the elements of murder.
¶ 18. Anthony's claim that the evidence below was insufficient to support his convictions for murder and aggravated assault is without merit. The court did not err in refusing to grant Anthony's motion for a judgment notwithstanding the verdict.

3. Weight of the Evidence
¶ 19. Anthony also contends that the jury's verdict is against the overwhelming weight of the evidence. There are limited circumstances under which a motion for a new trial, which challenges the weight of the evidence, should be granted: "Only in `exceptional cases in which the evidence preponderates heavily against the verdict' should the trial court invade the province of the jury and grant a new trial." Dilworth v. State, 909 So.2d 731, 737(¶ 21) (Miss.2005) (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). In order for us to reverse, "[t]he verdict must be `so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" Id. (quoting Bush, 895 So.2d at 844(¶ 18)). We will weigh the evidence "in the light most favorable to the verdict." Id. (quoting Bush, 895 So.2d at 844(¶ 18)).
¶ 20. Anthony contends that minor inconsistencies in the State's theory of the case are sufficient to show that the verdict was against the overwhelming weight of the evidence. Specifically, Anthony contends that Johnson's testimony that Anthony and Clemente exited the two-door vehicle first even though they were seated in the back "does not make any sense. . . . [Johnson's] story is simply impossible." Anthony also questions why Johnson's wallet and two cell phones were left in the vehicle if the assault was a robbery, as argued by the State. Anthony also contends that Johnson's testimony is not credible because Johnson testified that he ran away some distance and then turned around to watch his cousin being murdered. Anthony argues: "Who allegedly gets shot, runs down the road, and turns around to see what was happening?" Anthony contends that Johnson's testimony that Tillis was still in the car is not credible because "[i]f [Johnson] had just been shot, why would Tillis still be in the car?" Anthony also asserts that the jury was prejudiced by the fact that Anthony's second videotaped statement, where he is wearing an "orange jail suit," "put the wicked notion in the [jury's] minds that Michael committed these crimes since he was dressed, not as someone with a presumption of innocence, but as a convicted felon." Anthony ends by asserting that "[t]he jury simply got the whole case wrong."
¶ 21. We find that the jury's verdict was not against the overwhelming weight of the evidence. An eyewitness, Johnson, testified as to what happened on the day of the shooting. His general account of the events is not inconsistent with the rest of the evidence presented, except for the statements of Anthony himself on *478 the stand. Anthony's testimony is not sufficient to support a finding that the jury's verdict was against the overwhelming weight of the evidence. While there are minor oddities in Johnson's testimony, such as how Clemente and Anthony exited the vehicle while Johnson and Tillis were still seated in the front of the two-door car, none of these details provide major inconsistencies with Johnson's testimony. The heart of Johnson's testimony, that Anthony shot him and shot Tillis, is consistent with the rest of the evidence presented in the case. Furthermore, the jury heard all of the inconsistencies listed by Anthony, and obviously still found that Johnson's version of events was credible. As already discussed at length, the jury sits as the judge of credibility in a criminal case, and we will not substitute our own findings as to witness credibility for those of a jury.
¶ 22. As to Anthony's contention that the jury was swayed by his appearance on the second videotape dressed in prison garb, we note that he cites no case law or other supporting citations for the notion that any error occurred. "Failure to cite any authority is a procedural bar, and [we are] under no obligation to consider the assignment of error." Owen v. Owen, 928 So.2d 156, 168(¶ 33) (Miss. 2006) (citing Williams v. State, 708 So.2d 1358, 1360-61(¶ 12) (Miss.1998)). Furthermore, no contemporaneous objection was made to Anthony's appearance on the videotape when the tape was played at trial. Anthony's failure to object at trial also procedurally bars this issue from our consideration. See Hobgood v. State, 926 So.2d 847, 851(¶ 8) (Miss.2006) (citing Robinson v. State, 585 So.2d 735, 737 (Miss. 1991)). We also note that, even if this issue were not procedurally barred, it is without merit, as Anthony was not shown wearing full garb and no handcuffs were on him in the video. Anthony was simply wearing an orange shirt, which apparently was a prison-issued shirt. Anthony was not presented to the jury as a "convicted felon." Procedural bar notwithstanding, Anthony has failed to show any evidence that his appearance on the videotape had any impact whatsoever on the jury.
¶ 23. Given the weight of the evidence supporting Anthony's conviction, allowing the jury's verdict to stand in this case does not "sanction an unconscionable injustice." The court did not err in refusing to grant Anthony's motion for a new trial, and Anthony's contentions to the contrary are without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION IN COUNT I OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION IN COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID TWENTY-YEAR SENTENCE TO RUN CONCURRENTLY WITH THE LIFE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.