ROBERTS, J., for the Court:
¶ 1. Following a trial in the Lowndes County Circuit Court, a jury convicted Daniel Paul Copple of two counts of murder and one count of aggravated assault. Copple was sentenced to life on Count I for the murder of James Bennett-Mann, life on Count II for the murder of Mark Caudill, and fifteen years on Count III for the aggravated assault of Michael Ward. His sentences were ordered to run consecutively to one another. Copple timely executed the current appeal claiming the verdicts were against the overwhelming weight of the evidence and that the evidence against him was insufficient to support the verdicts. He also alleges that he was denied his right to a fair trial since the circuit court denied his motion for a change of venue. Finding his arguments without merit, we affirm Copple’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal stems from events that occurred in the early-morning hours of February 16, 2011, at the Elbow Room, a local bar in Columbus, Mississippi. Around 6:30 p.m. on the evening of February 15, 2011, Ward, a bartender at the Elbow Room, was working when Caudill, a customer, pulled out a semi-automatic handgun to show him. Ward informed Caudill that he needed to put it away or leave the bar. Caudill finished his beer and left the Elbow Room. Later that evening, Caudill returned, as did another customer, Bennett-Mann. After midnight, AI Comer, another Elbow Room employee, arrived to help Ward begin closing the bar. Ward left the front bar area to repair a broken toilet. After approximately five to ten minutes, Ward finished repairing the toilet and began walking toward the bar area again. He had stopped in a room containing the pool table and jukebox to turn the music down when he heard some scuffling in the bar area and then a single gunshot. Ward was able to see the shooter based on his location in the back room. He identified Copple as the shooter and described seeing Copple shoot downward at approximately a twenty-five degree angle and stated that Copple fired at least five shots total. Copple then entered the back room and held the gun to Ward’s head. Ward, on his knees, pleaded for his life; however, according to Ward, Copple tensed his arm as if he was pulling the trigger, but the gun did not discharge. Copple looked at the gun and then turned and exited the Elbow Room.
¶ 3. Comer also witnessed the incident. He explained that while Ward was working on the broken toilet, he and Bennett-Mann had gone into the back area where the jukebox was located to use some credits on the jukebox. As the men were walking toward the bar area again, Comer saw Copple and Caudill in a “clench,” with Copple pushing Caudill to the ground. Comer started to go break up the men, and he was approximately three feet away when the gun was first fired. He stated that he saw Caudill go limp on the floor after the shot was fired. Comer ran out of the bar and across the street to a bar called Zachary’s. He informed the employees at Zachary’s that there was a shooting, and they called the police. Comer remained at Zachary’s until the police arrived at the Elbow Room just a few minutes later. A Zachary’s employee, Jer *654 emy Eakin, testified that he saw a man walk out of the Elbow Room and down the street with what appeared to be a gun in his hand. Police arrested that man, later identified as Copple.
¶ 4. Police arrived at the scene, found the gun lying in the street, and arrested Copple, who was approximately twenty to thirty feet away from the gun. Officers entered the Elbow Room and discovered Bennett-Mann, gasping for air and sitting on the back of the already deceased Cau-dill. Bennett-Mann was transferred to the hospital where he later died. Several police officers and investigators testified at Copple’s trial. They indicated that Cop-pie’s demeanor the night of his arrest varied from calm and laughing to irate and belligerent.
¶ 5. Copple was indicted on July 26, 2011, for two counts of murder and one count of aggravated assault.[1] He entered a plea of not guilty, and his jury trial began on December 5, 2011. The jury heard testimony from Ward and Comer as well as from Copple. At trial, Copple testified that as soon as he walked into the bar, Caudill pulled a gun on him. The two began wrestling and Bennett-Mann joined the fight. Copple claimed he was able to wrangle the gun away from Caudill, but he did not remember anything about shooting Caudill or Bennett-Mann or about holding the gun to Ward’s head. Additionally, a forensic pathologist testified that Caudill suffered two gunshot wounds: one in the head and one in the neck. The neck wound was fired slightly downward at near-contact range, and the head wound was slightly upward at an intermediate range. Bennett-Mann suffered three gunshot wounds: one in the head, one in the chest, and one in the forearm. The forensic pathologist testified that Bennett-Mann’s forearm wound was consistent with a defensive posture. There was also testimony from Caudill’s flaneé that Caudill was not in good physical condition, having been seriously injured previously and unable to turn or twist his head without moving the rest of his body. She further testified that his shoulder was still broken, and he struggled to even dress himself. Bennett-Mann’s flaneé also testified at trial. She had been standing outside the Elbow Room just minutes before the incident attempting to persuade Bennett-Mann to come home. She testified that she saw Copple enter the bar, but she did not hear any fights or scuffles after he walked into the bar..
¶ 6. Trial concluded on December 8, 2011, with the jury finding Copple guilty on all three counts. He was sentenced to life on each count of murder and fifteen years on the aggravated-assault count, with each sentence to be served consecutively and in the custody of the Mississippi Department of Corrections. Copple filed his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The circuit court denied the motion, and Copple appealed, raising the following three issues for review:
I. The evidence is insufficient to support the verdict, as the State failed to prove beyond a reason *655 able doubt that Copple did not act in necessary self[-]defense.
II. The verdict is against the overwhelming weight of the evidence, which establishes that Copple ac[t]ed in necessary self-defense.
III. [Copple] was denied his right to a fair trial when the [circuit] court denied a change of venue.
ANALYSIS
I. SUFFICIENCY OF THE EVIDENCE
¶ 7. Copple first argues that the evidence presented at trial was insufficient to support the jury’s verdicts because the State did not present proof beyond a reasonable doubt that Copple did not act in necessary self-defense. This Court’s standard of review in challenges to the sufficiency of the evidence is, when viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). When the issue of self-defense is raised, the burden is on the State to prove “beyond a reasonable doubt that the defendant was not acting in necessary self-defense.” Harris v. State, 937 So.2d 474, 481 (¶ 23) (Miss.Ct.App.2006) (citing Heidel v. State, 587 So.2d 835, 843 (Miss.1991)).
¶ 8. The elements of murder are found in Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006). Section 97-3-19(l)(a) states: “The killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]” However, Mississippi Code Annotated section 97-3-15 (Rev. 2006) contains the elements of justifiable homicide, including necessary self-defense. Section 97 — 3—15(l)(f) provides that the killing of a human being is justifiable “[w]hen committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished[.]”
¶ 9. At trial, there were multiple witnesses who described the events that occurred that night. There was testimony that Caudill was intoxicated and had a gun on his person earlier the night of the incident. Copple testified that Caudill pulled the gun on him as soon as he walked into the Elbow Room, and at some point, an intoxicated Bennett-Mann jumped into the fight, leaving Copple no choice but to kill both Caudill and Bennett-Mann to save his own life. Copple claims that because there was no eyewitness testimony as to who started the fight, it was highly possible and probable that he was attacked by the two drunk and armed men and “shot them out of his reasonable apprehension of bodily harm.” However, Copple also testified that he does not remember actually shooting the gun, but he remembered that at some point, he did have complete control of the gun.
¶ 10. There is conflicting testimony about Copple’s version of the events from several witnesses. First, BennetWHann’s fiancé testified that she was standing just outside the entrance door of the Elbow Room when Copple walked inside; however, she heard no commotion or fighting. This disputes Copple’s testimony that as soon as he walked in, Caudill pulled the gun and started attacking him. Comer testified that before any scuffling was heard or shots were fired, Bennett-Mann was back inside the Elbow Room, and they had gone to the jukebox area of the bar. *656 Based on this testimony, Bennett-Mann could not have joined the fight until after the first few shots were fired. Police investigators testified that they recovered no weapons off the bodies of Caudill and Bennett-Mann. Additionally, the testimony of Ward and Comer both describe Copple as having the advantage in the fight, as he was pushing Caudill to the ground and standing over Caudill as he shot the gun at a downward angle. This testimony is consistent with the forensic pathologist’s testimony that Caudill’s gunshot wounds were in close contact and angled slightly downward. According to documents contained in the record, Copple was approximately six-feet tall and weighed 195 pounds at the time of his arrest. At trial, Ward testified that Caudill was approximately five-feet- and-ten-inches tall and weighed 150 pounds. Copple’s advantage in the fight is supported by the size difference between the two men. The forensic pathologist also described Bennett-Mann’s gunshot wound to his arm as consistent with a defensive posture. Lastly, police investigators testified that they did not recall seeing any injuries or wounds on Copple’s arms or face at the time he was arrested.
¶ 11. In Anthony v. State, 936 So.2d 471, 476 (¶ 14) (Miss.Ct.App.2006) (internal quotation omitted), this Court noted “that the jury sits as the trier of facts in evidence, and as such is charged with the duty of judging credibility.” Additionally, it is well settled that “[j]urors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict.” Id. (quoting Jones v. State, 920 So.2d 465, 472 (¶ 22) (Miss.2006)).
¶12. We note that Copple has made no argument about his conviction for aggravated assault; thus, we do not address the issue of the sufficiency of the evidence on that conviction. Faced with conflicting versions of what happened, the jury was entitled to believe the witnesses it found most credible. From the evidence presented at trial, reasonable jurors could have found that the State proved every element of the crimes of murder beyond a reasonable doubt, including that Copple was not acting in necessary self-defense. Copple’s version of the events that he was attacked and was acting in necessary self-defense was not supported by or consistent with the other evidence at trial. Therefore, this issue is without merit.
II. WEIGHT OF THE EVIDENCE
¶ 13. Copple next argues that the murder verdicts were contrary to the overwhelming weight of the evidence. In Bush, 895 So.2d at 844 (¶ 18), the Mississippi Supreme Court outlined the standard of review for challenges to the weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citation omitted). Further, the evidence is viewed “in the light most favorable to the verdict.” Id.
¶ 14. The evidence presented at trial was detailed in the facts section of this opinion as well as the previous discussion on the sufficiency of the evidence; therefore, we will not detail the facts again. We do reiterate that it is the duty of the jury to weigh the credibility of each witness. See Anthony, 936 So.2d at 476 (¶ 14). Based upon the verdicts returned, the jury found the State’s witnesses more *657 credible than Copple. After a thorough reading and analysis of the record, this Court does not find the verdict to be against the overwhelming weight of the evidence presented at trial. Allowing Cop-pie’s convictions to stand would not sanction an unconscionable injustice; therefore, we find that this issue is without merit.
III. CHANGE OF VENUE
¶ 15. Lastly, Copple argues that the circuit court erred in failing to grant his motion for a change of venue due to excessive media coverage and the fact that there were two murder victims. “The decision to grant or deny a motion for change of venue is within the discretion of the trial judge.” McCune v. State, 989 So.2d 310, 316 (¶ 11) (Miss.2008).
¶ 16. Pursuant to Mississippi Code Annotated section 99-15-35 (Rev. 2007), a motion for a change of venue must be in writing and supported by affidavits of two or more credible persons showing that the defendant cannot receive a fair and impartial trial in that county. When a proper change-of-venue motion is filed with the circuit court, a presumption arises that an impartial jury is unattainable, and the burden is on the State to rebut that presumption. Johnson v. State, 476 So.2d 1195, 1211 (Miss.1985).
¶ 17. In the present case, Copple did not properly support his change of venue motion with facts or affidavits; therefore, the presumption did not arise, and the State did not have the burden of proving that a fair trial could be obtained in Lowndes County. The record contains Copple’s change of venue motion, but eon-tains no other affidavits in support of the motion.[2] As Copple did not satisfy section 99-15-35, this issue is without merit.
¶ 18. Further, after reviewing the record, we do not find evidence that the circuit court erred in determining that the jurors were fair and impartial. During voir dire, the circuit court specifically addressed any pretrial publicity about the case. It asked the jury pool whether any of them had read, seen, or heard anything about the case. Twenty-three of sixty-nine jurors indicated that they had seen publicity about the case. The circuit court then asked those jurors whether it was within the last week that they had heard about the case. Eleven of those twenty-three jurors indicated that they had seen recent coverage. The circuit court then asked all twenty-three jurors whether they had formed an opinion about how the case should be decided based on the publicity. Approximately five indicated that they had formed an opinion. Finally, the circuit court asked those five jurors whether they could set their opinion aside based on evidence presented at trial. Three said they could not change their opinion. Based on the record, it appears that those three jurors were excused for cause. The circuit court again addressed the twenty jurors remaining of the original twenty-three jurors, and again asked whether they could base their verdict on the evidence presented at trial and not the publicity. They responded that they could. Thus, of the sixty-nine potential jurors, only three indicated that they had heard publicity of the trial and that they had already formed an unchangeable opinion.
¶ 19. Because Copple did not file a proper motion for change of venue, and *658 there is no indication in the record that Copple did not receive a fair trial by an impartial jury, this issue is without merit.
¶ 20. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, MURDER, AND SENTENCE OF LIFE ON EACH COUNT, AND COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF FIFTEEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. The indictment contained an additional count of aggravated assault stemming from a separate incident in which Copple allegedly hit someone with his vehicle. Copple filed a motion to sever this count labeled as Count III in the indictment. The record does not contain the circuit court’s ruling on this motion to sever; however, it does contain the circuit court’s order to renumber the indictment, swapping the Count III in question to Count IV and moving the old Count IV up to Count III. At this particular trial, Copple was not tried for the aggravated assault in the renumbered Count IV, and it is not a part of the present appeal.

. A letter contained in the record from Copple accompanies the change-of-venue motion; however, the letter focuses primarily on his attorney’s performance and his treatment in jail. There is no mention in his letter of any pretrial publicity or reason to support a change of venue.