# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01747-COA

SHERIDAN TORRANCE DAVIS A/K/A                    APPELLANT
SHERIDAN DAVIS

v.

STATE OF MISSISSIPPI                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2013 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MURDER, AND SENTENCED TO LIFE; COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND SENTENCED TO SIXTEEN YEARS; AND COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCED TO TEN YEARS, ALL AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE |
| DISPOSITION: | AFFIRMED: 02/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Sheridan Torrance Davis was convicted of murder, possession of a controlled substance, and possession of a firearm by a convicted felon under Mississippi Code Annotated sections 97-3-19(1)(a), 49-29-139(c)(1), and 97-37-5, respectively. In this appeal, Davis argues that: (1) the evidence was insufficient to support a guilty verdict, as the State failed to meet its burden in proving Davis did not act in self-defense; (2) the verdicts on counts I and III are against the overwhelming weight of the evidence; and (3) the trial court inappropriately admitted hearsay testimony from the victim as dying declarations or excited utterances under Mississippi Rules of Evidence 804(b)(2) or 803(2), respectively. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.    On the night of November 2, 2011, Davis encountered his acquaintance, Marcaris Lowe, at the Island View Casino in Gulfport. Lowe asked Davis for drugs, and Davis complied. After the drug deal, the two men returned to gambling for an unknown period of time. Davis stated he lost approximately $700 or $800, after which he decided to leave the casino and go to a friend's apartment to sleep. Lowe accompanied Davis to the apartment, where an incident occurred during which Lowe sustained four gunshot wounds.

¶3.    According to Davis's version of events, Davis testified he slept on the couch until he felt Lowe feeling around in his pockets in a search for drugs. Davis and Lowe engaged in a fight when Lowe allegedly pulled out a gun. Davis testified he successfully took the gun from Lowe and claimed he shot Lowe in self-defense.

¶4.    The State offered a different story and put on evidence to suggest Davis deliberately

2

shot Lowe. Further, the State contended Davis could not have acted in self-defense in light of the evidence, especially considering the fact that Lowe sustained four gunshot wounds in the back, and the crime scene contained no signs of a struggle.

¶5. Though the parties disagree about what led to the shooting, the events after the fact were not disputed. Davis fled the apartment after shooting Lowe, taking the gun with him. Davis called his friend, Clifton King, to pick him up a few blocks away. Shortly after King arrived, the police stopped the vehicle, and Davis fled on foot. Several officers and K-9 units then tracked Davis for several minutes.

¶6. During the pursuit, officers found two brown shoes, later identified as Davis's, and a firearm near the home where officers eventually apprehended Davis. When officers conducted a search incident to the arrest, they found a small bag of a white substance, later identified as cocaine, in his pocket. The police officers took Davis into custody.

¶7. After Davis fled the scene, Lowe managed to crawl to the front balcony of the apartment and yell for help. A neighbor called the police and attempted to help Lowe. During both the 911 call and after officers arrived, Lowe named Davis as his shooter. Paramedics then transported Lowe to the hospital where he underwent emergency surgery and remained in the ICU for several days. On November 27, 2011, approximately twenty-five days after the shooting, Lowe suffered a pulmonary embolism, and died as a result. The State subsequently charged Davis with murder, in addition to the possession charges.

¶8. Prior to trial, Davis filed a motion in limine that sought to exclude the statements made by Lowe naming Davis as the shooter. After a hearing on the motion, the trial court denied the motion, and determined the statements were admissible as exceptions to the

3

hearsay rule, as either dying declarations under Rule 804(b)(2) or excited utterances under Rule 803(2).

¶9. During the trial, the State put on evidence that Davis committed deliberate-design murder by intentionally shooting Lowe in the back, which led to the pulmonary embolism that ultimately killed Lowe. The State also submitted that Davis possessed cocaine and the firearm used to shoot Lowe. Davis countered the State's evidence by arguing that he shot Lowe in self-defense, and possessed the gun out of the necessity of his act of self-defense. Davis, however, admitted his possession of cocaine.

¶10. The jury found Davis guilty on all three counts. The trial court then sentenced Davis to life imprisonment without the possibility of parole on the murder charge, sixteen years on the possession-of-a-controlled-substance charge, and ten years on the possession-of-a-firearm-by-a-felon charge. Davis filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. The motion was denied. It is from this judgment that Davis now appeals.

ANALYSIS

I. *Whether the evidence is sufficient to support the jury verdict in light of Davis's claim of self-defense.*

¶11. Davis argues that there was insufficient evidence to sustain the jury's verdict of guilty. Specifically, Davis contends the State failed to prove that Davis did not act in self-defense, and the jury could not have found Davis committed every element of deliberate-design murder required for conviction.

¶12. To determine the sufficiency of the evidence, the central issue is "whether the

4

evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" *Conner v. State*, 138 So. 3d 158, 162 (¶8) (Miss. Ct. App. 2013) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). "When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Miles v. State*, 956 So. 2d 349, 350 (¶6) (Miss. Ct. App. 2007) (citation omitted).

¶13.    The jury convicted Davis of committing deliberate-design murder under Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014), which states in relevant part: "(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being[.]"

¶14.    Davis argued at trial, and on appeal, that he acted in self-defense, and that the insufficient evidence could not show he committed deliberate-design murder. The law did not require Davis "to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted." *Ambrose v. State*, 133 So. 3d 786, 791 (¶17) (Miss. 2013) (quoting *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991)). Therefore, the State bore the burden in showing Davis committed the crime and acted in a manner inconsistent with self-defense.

¶15.    This Court has held:

5

> [T]he killing of a human being is justifiable "when committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished."

*Copple v State*, 117 So. 3d 651, 655 (¶8) (Miss. Ct. App. 2013) (quoting Miss. Code Ann. § 97-3-15(1)(f) (Rev. 2014)). "A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm." *Wilder v. State*, 118 So. 3d 628, 631 (¶9) (Miss. Ct. App. 2012) (quoting *Livingston v. State,* 943 So. 2d 66, 71 (¶13) (Miss. Ct. App. 2006)). "The question of whether the defendant acted in self-defense is a question for the jury to resolve." *Id.* (citing *Dubose v. State,* 919 So. 2d 5, 7 (¶11) (Miss. 2005)).

¶16.    After viewing the evidence in a light most favorable to the State, sufficient evidence exists to uphold Davis's conviction. Davis admitted to shooting Lowe, but argued he did so in self-defense during the course of a physical altercation. Though Lowe possessed the physical upperhand over Davis, the State put on evidence that placed reasonable doubt regarding the self-defense claim. The apartment where Davis shot Lowe showed no signs of a struggle or any type of altercation other than the shooting. Davis and Lowe had no injuries indicating a physical struggle. Notably, Davis shot Lowe four times, all of which entered through Lowe's back.

¶17.    The jury determined Davis committed each element of the crime of deliberate-design murder beyond a reasonable doubt, and implicitly discredited Davis's argument of self-defense. Because the State met its burden of disproving self-defense, and the jury could have reasonably concluded Davis committed every element of deliberate-design murder, this Court

6

finds the evidence sufficient to support Davis's guilty verdict. Thus, this issue has no merit.

        II.      *Whether the jury verdicts on counts I and III are against the overwhelming weight of the evidence.*

¶18.    Davis argues the overwhelming weight of the evidence should overcome the guilty verdicts on counts I and III. Davis maintains the evidence demonstrated he acted in self-defense and out of necessity, which points in favor of his acquittal. Therefore, according to Davis, upholding his conviction would contradict the weight of the evidence.

¶19.    "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). This Court should grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* In considering the case, "the evidence should be weighed in the light most favorable to the verdict." *Id.*

        A.      *The Verdict in Count I*

¶20.    Once again, the State bore the burden in showing Davis did not act with necessary self-defense on count I. *Heidel*, 587 So. 2d at 843. Davis reiterates that the State failed to disprove his self-defense claim. However, as previously discussed, the State met its burden, and disputed any evidence Davis acted in self-defense. The jury agreed with the State when it issued a guilty verdict. The question of a self-defense claim falls under the purview of the jury as fact-finders. *Jones v. State,* 39 So. 3d 860, 865 (¶28) (Miss. 2010) (citation omitted). Thus, a jury's decision regarding the weight of the evidence will stand unless allowing the

7

jury's finding " to stand would sanction an unconscionable injustice." *Long v. State*, 52 So. 3d 1188, 1192 (¶11) (Miss. 2011).

¶21.    The evidence against Davis included his admission to shooting Lowe, the gunshots striking Lowe from behind, the evidence conveying a scene without a struggle, and the statements from Lowe naming Davis as the shooter, which all weighed against Davis. Thus, looking at the evidence in a light most favorable to the verdict, this Court finds the guilty verdict does not contradict the weight of the evidence.

###    B.    *The Verdict in Count III*

¶22.    Additionally, Davis argues the defense of necessity on the possession-of-a-firearm charge weighed against his conviction on count III. Davis asserts that he only possessed the firearm he used to shoot Lowe out of necessity. To show necessity, "a defendant must prove three essential elements: (1) the act charged was done to prevent a significant evil; (2) there [. . .] was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided." *Stodghill v. State*, 892 So. 2d 236, 238 (¶8) (Miss. 2005). However, unlike the burden of self-defense, the burden of proving the affirmative defense of necessity falls on the defendant. *Id.* at 239 (¶9) (citation omitted).

¶23.    Davis contends his actions of self-defense led to the necessary possession of the firearm when he struggled with Lowe, disarmed him, and then shot him in order to protect himself. To successfully prove the defense of necessity, Davis must have shown his actions comported with the requirements of necessity. Though Davis alleges he shot Lowe in order to stop Lowe from shooting him, Davis did not meet the required elements of necessity regarding the shooting, and failed to explain why he kept the firearm when he fled the scene.

8

Like the self-defense claim, the question of whether actions were out of necessity remains a question for the jury to resolve. The jury found Davis's actions did not constitute necessity, and found Davis guilty. Because the jury found Davis acted without necessity, and the verdict does not sanction an unconscionable injustice, the verdict on count III stands.

¶24. When we consider the evidence presented in the light most favorable to the verdict, we cannot conclude that the verdict is contrary to the overwhelming weight of the evidence. Accordingly, we find no merit to this issue.

> III. *Whether the trial court erred in admitting the victim's statements as either dying declarations under Rule 804(b)(2) or excited utterances under Rule 803(2).*

¶25. Davis contends the trial court erred when it admitted Lowe's statements naming Davis as the shooter into evidence. While Lowe's statements constituted hearsay, the trial court determined the statements met the hearsay exception of a dying declaration or, in the alternative, an excited utterance. Davis disputes this admission, arguing that Lowe neither believed his death was imminent for a dying declaration nor were his responses spontaneous for an excited utterance.

¶26. "This Court's standard of review regarding the admissibility of testimonial evidence is [. . .] abuse of discretion." *Trotter v. State*, 9 So. 3d 402, 407 (¶9) (Miss. Ct. App. 2008) (citing *Harris v. State*, 861 So. 2d 1003, 1018 (¶41) (Miss. 2003)). "We leave such admissions to the sound discretion of the trial judge, and any error warrants reversal only when the abuse of discretion prejudices the accused." *Id.*

¶27. Ordinarily, hearsay testimony is not admissible. M.R.E. 802. However, a trial court may admit a hearsay statement if those statements meet the hearsay exceptions promulgated

9

by law.  *Id.*  Dying declarations and excited utterances both allow for the admittance of hearsay evidence as exceptions to the general bar on hearsay evidence.  M.R.E. 804(b)(2) (dying declarations); M.R.E. 803(2) (excited utterance).

¶28.    In order for a statement to qualify as a dying declaration, the Mississippi Supreme Court has held the following criteria must be met: "(1) [t]he wounded person is in extremis and dies after making the statement; (2) [t]he person realizes that he is mortally wounded, and (3) [h]e has no hope of recovery."  *Watts v. State*, 492 So. 2d 1281, 1287 (Miss. 1986) (citations omitted).  "The test for admission under Rule 804(b)(2) is a determination of whether the decedent declarant believed that death was imminent."  *Berry v. State*, 611 So. 2d 924, 926-27 (Miss. 1992) (citing *Ellis v. State*, 558 So. 2d 826, 829-30 (Miss. 1990)).  Thus, Lowe must have made the statements under a belief of his impending death.

¶29.    Lowe made two separate statements that the trial court admitted into evidence.  First, during a 911 call to report the shooting, Lowe told the 911 operator that a man named "Shelly," later identified as Davis, shot him.  Second, when police arrived on scene, Detective Samuel Jewel[1] asked Lowe questions regarding the incident.  Detective Jewel asked Officer Walter Brightman, another first responder, if he could record the conversation on his portable recording device, which transmitted audio from a microphone on Officer Brightman to a recording device in his patrol car.  During this conversation with Detective Jewel, Lowe named Davis as his shooter.

¶30.    The trial court found these statements fell under the dying-declaration exception to

---

[1]The record contains various spellings of Detective Jewel's name.  However, we follow the spelling from the trial transcript.

the prohibition against hearsay. Lowe asked for medical attention, clearly related he could not feel his legs, had labored breathing, and lost a large quantity of blood. Under these circumstances, the trial court found Lowe suffered in extremis, realized the severity of the wounds, and had no hope of recovery. Additionally, Lowe died, rendering him unavailable to testify. All of this evidence supported the conclusion that the statements were dying declarations.

¶31. Furthermore, the trial court analogized this case to the case of *Trotter*. In *Trotter*, the victim told the responding police officer he needed help and felt cold. *Trotter*, 9 So. 3d at 407 (¶11). The victim also told the officer who shot him, but died thirteen days later. *Id.* The officer then testified at trial regarding the statement naming Trotter as the shooter. *Id.* Trotter argued the victim lacked the requisite belief of impending death to allow for a hearsay objection. *Id.* The trial court admitted the statement, and determined the circumstances surrounding the victim's statement indicated he could have realized his impending death. *Id.* Thus, the trial court found the statement constituted a dying declaration, a decision this Court upheld. *Id.*

¶32. Based on the circumstances surrounding Lowe's statements and the *Trotter* case, we find the trial court did not err in admitting the statements as dying declarations. Because we find the statements were properly admitted under the exception to the hearsay rule in Rule 804(b)(2), we decline to address whether the statements fell under the excited-utterance exception as well.

¶33. For the foregoing reasons, we find the trial court did not abuse its discretion in finding sufficient evidence to support Davis's conviction, and in admitting Lowe's statements into

11

evidence. Additionally, we find the weight of the evidence did not contradict the guilty verdicts. Therefore, we affirm Davis's conviction.

¶34. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND SENTENCE OF SIXTEEN YEARS; AND COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, ALL AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**